# GREAT LAKES VARNISH WORKS, INC. v. HAGBARTH H. BORGEN AND OTHERS.[1]

July 3, 1931.

No. 28,405.

*Hugh J. McClearn*, for appellant.
*McCoy & Hansen*, for respondents.

DIBELL, J.

This is an action in the form of a common count for goods sold and delivered to the defendants at their special instance and request of the reasonable and agreed value of $1,281.99. The indebtedness is alleged as of January 1, 1928. The action was tried to the court. There were findings and judgment for the defendants. The plaintiff's motion for a new trial was denied. It appeals from the judgment.

In 1927 and for many years prior the defendants conducted a paint and hardware business in Duluth and sold to the retail trade.

E. F. Vigeant was engaged in the paint brokerage business at Duluth and sold to a like trade. For a number of years the plaintiff, which did business in Chicago, sent him paints on consign-

[1]Reported in 237 N. W. 609.

ment. He fixed the selling price. The difference between the price which he paid and the price for which he sold was his profit. When he sold for cash he remitted to the plaintiff. When he sold on credit the plaintiff carried his credit items and when collected gave him credit for his profit.

In 1927 Vigeant moved his stock into the store of the defendants, which was commodious. He had been keeping it at his home. He had no equipment for transportation or delivery. All he had was merchandise and a trade list. He seems to have done a considerable business. The defendants had a better organization and better equipment and trade facilities. They ground paints and did a small manufacturing business. One of them was on the road a great part of the time. The agreement under which the stocks were put together was oral. A corporation was to be formed, and preliminary steps were taken but no actual corporation resulted. The understanding was indefinite, and just what was done is uncertain. A division of profits and ultimate consolidation was intended. The business ran along loosely for several months. It is clear that there was a shortage to the plaintiff in the sum of $1,281.99. The court might have found that after Vigeant went with the defendants the stocks were intermingled and that the defendants were liable as upon a sale. The defendants claim, and they testified, that the stocks and receipts were kept separate, sufficiently for identification, and that they paid for what they bought from the plaintiff and used none of the proceeds of Vigeant's sales for which they were accountable to the plaintiff; in short that they took nothing in money or merchandise which was a part of the shortage. The court believed them.

In the latter part of the year a representative of the plaintiff came to Duluth and found things in confusion. The exact condition of Vigeant's stock could not be ascertained. It is inferable that Vigeant and the defendants were not altogether in harmony. The defendants were desirous of making some arrangement whereby they instead of Vigeant would sell the merchandise of the plaintiff. There was correspondence looking toward it.

The trial court examined the evidence at the conclusion of the case and again on the plaintiff's motion for amended findings and a new trial. It was of the opinion that there was not a sale. The evidence justifies its finding. There is evidence indicating that the defendants really did get merchandise and owed the plaintiff all or some part of the shortage. There is evidence which does not accord with this showing. The burden of proof was upon the plaintiff. The question was one of fact for the court. The most that can be said in support of the plaintiff is that a finding in its favor would stand. The trial court might have a feeling of uncertainty whichever way it found; but a finding was necessary, and when made upon evidence supporting it it put the contentions of the parties at rest. The plaintiff relies upon an exhibit containing a number of pages as showing the liability of the defendants. It is unnecessary to detail it. The trial court's view of it is stated sufficiently in its memorandum and is accepted.

■ The plaintiff claims that if there was not a sale and delivery there was a conversion; and that by the well understood rule the plaintiff could waive the tort and sue in assumpsit for goods sold and delivered as upon a quasi contractual obligation. Downs v. Finnegan, 58 Minn. 112, 59 N. W. 981, 49 A. S. R. 488; McArthur v. Murphy, 74 Minn. 53, 76 N. W. 955; Keener, Quasi Contracts, 159, 192, et seq; 2 Street, Foundations Leg. Liab. 215, et seq; 3 Id. 196; Woodward, Quasi Contracts, § 277, et seq.

It is sufficient to say that there was no finding of a conversion and none required by the evidence; and if there was none there was no ground for the application of the doctrine of waiver of tort and suit in assumpsit; nor was the case tried upon such theory.

Judgment affirmed.