Cite as 2021 Ark. App. 252

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-20-501

|  |  |
|---|---|
| | **Opinion Delivered** May 19, 2021 |
| DEREK LAYNE CLARK | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT |
| APPELLANT | [NO. 26CR-18-930] |
| V. | HONORABLE JOHN HOMER WRIGHT, JUDGE |
| STATE OF ARKANSAS | AFFIRMED |
| APPELLEE | |

## LARRY D. VAUGHT, Judge

Derek Clark appeals his conviction by a Garland County Circuit Court jury of one count of second-degree murder for the death of Donald Easley. On appeal, he argues that the killing was in self-defense and that the State failed to present sufficient evidence to negate his justification defense. Because his argument is not preserved for our review, we affirm.

The evidence at trial showed that at the time of Donald's death, Derek was briefly staying with Donald in a trailer near Hot Springs. He had been living with a married couple, Amanda and Shawn Stewart, when he and Amanda began an affair. Five days before Donald's death, Shawn discovered the affair, and Amanda and Derek fled the Stewart home. The couple stayed with various family and friends for several days, during which time they used methamphetamine. During this time, Derek and Amanda had an altercation, and he pressed a knife to her neck and cut her.

When Amanda wanted to briefly return home, she arranged for Derek to stay with her friend Donald. Donald's friend James "Andy" Clark (no relation to Derek) was also at the trailer with them.

At trial, Andy testified that on December 2, 2018, he, Donald, and Derek smoked methamphetamine and drank alcohol at the trailer. Andy left the trailer at some point to look for his keys in his car, and Derek was left alone in the trailer with Donald. Andy testified that he heard Donald shouting for help, but when he went inside, he thought Donald and Derek were "horse playing" or wrestling. Andy told them to stop and went back outside to his car. Later, Andy heard Donald call out for help again, this time with a weaker voice. When Andy went back inside to investigate, he saw Derek standing over Donald stabbing him with a knife. Andy then went out to his car and again tried to find his keys so that he could flee because he was afraid for his safety. Andy testified that while he was looking for his keys, Derek came outside, sat down in Andy's car, and said, "I just killed Donnie." Andy testified that Derek then offered him $1,000 if Andy would help Derek flee. Andy responded that he still did not have his keys, so he offered to go get help for Derek, who appeared to be hurt. Andy testified that he noticed Derek's hands and arms were covered in blood and looked like he had "slaughtered a deer." Andy testified that he then went to a nearby gas station and flagged down an officer. Andy also testified that, later when he was questioned by officers at the sheriff's station, he chose the photo of another man from the photo array, not the photo of Derek. He returned to the station the following day to provide correct information.

Patrol officer Shane Tatum with the Garland County Sheriff's Office testified that he encountered Derek at the gas station. When Officer Tatum arrived at the trailer, he found the

camper's door open and blood inside the door. He stepped into the camper and saw a deceased body at the end of the hallway. He then called the Criminal Investigation Division.

At the scene, investigators discovered a serrated knife covered in blood hidden in a laundry basket in Donald's camper. They also recovered a bloody paper towel in a trash bag, and the blood found on the knife and paper towel matched Donald's DNA. Two days later, on November 6, investigators found Derek hiding in a locked shed behind his uncle's house. Derek's shirt and hands were covered in dried blood.

The State introduced a video of investigators interviewing Derek. Initially, Derek claimed that he did not remember any details about being at Donald's camper. He also stated that he did not know Donald was dead, and he denied having killed Donald. Derek then changed his story. He claimed that Donald punched him several times and that they ended up on the floor. Derek stated that he reached around on the floor and found a knife and that he then "hit" Donald a couple of times with the knife to get Donald off of him. He stated that, afterwards, he dropped the knife, went outside, and got into the car with Andy. Derek claimed he asked Andy for help because he had injured his hand and that he then fell asleep in Andy's car. When he woke up, Andy was gone. Derek further claimed he started walking and ended up falling asleep multiple times in the woods, then he went to his uncle's shed where he fell asleep again.

The medical examiner testified that Donald suffered "at least 13 different injuries" on his right side "of varying degrees of severity" and "at least 13 injuries" on his left side. Donald suffered "sharp-force injury" to "the jugular vein on both sides" of his neck, which caused his death.

The State rested, and Derek's counsel made the following motion for directed verdict:

> Your Honor, we'll move for a directed verdict on the ground [that the] State's [evidence] failed to establish purposeful conduct of the defendant. Even given the testimony as – as taken, his actions might've – might've caused the death of the victim, was not done so for the purpose of causing that death.

The trial court denied his motion.

Derek testified that he and Donald had been looking for Andy's keys in the bedroom when Donald came at him with a knife, angry about Derek's affair with Amanda. He testified that Donald started "swinging" at him and hit him a couple of times in the face with his hands. While Derek was defending himself, Donald cut Derek's left hand with the knife. Derek testified that he knocked the knife from Donald's hand, and they continued to struggle. Derek claimed he found the knife and "start[ed] hitting [Donald] with it." He testified that Donald continued to "attack" him, and he "hit [Donald] with the knife again." Derek stated that, afterward, he went outside and sat in Andy's car. He asked Andy for help and then fell asleep. When he awoke, he got out of the car, started walking through the woods, and fell asleep again. Then he went to his uncle's shed, where he slept until investigators found him two days later on November 6. Derek also testified that he had recently learned that Donald and Shawn were friends and that Donald had told Amanda he was going to kill Derek due to the affair.

After the defense rested, Derek renewed his motion for directed verdict arguing the State failed to prove that his conduct was "purposeful." The court again denied his motion.

After hearing the above evidence, the jury found Derek guilty of second-degree murder, and he was sentenced to thirty years' imprisonment. This timely appeal followed.

Derek's only argument on appeal is a challenge to the sufficiency of the evidence. He claims that the evidence demonstrated that he was justified in killing Donald because Donald attacked him, and he had a right to defend himself.

A motion for a directed verdict is considered a challenge to the sufficiency of the evidence. *Mosely v. State*, 40 Ark. App. 154, 156, 844 S.W.2d 378, 379 (1992). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Estrada v. State*, 2011 Ark. 3, at 4–5, 376 S.W.3d 395, 398. This burden is met when evidence is "of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. It must force the mind to pass beyond suspicion or conjecture." *Mosely*, 40 Ark. App. at 156, 844 S.W.2d at 379. On appeal, the evidence is viewed in the light most favorable to the verdict. *Knight v. State*, 25 Ark. App. 353, 355, 758 S.W.2d 12, 13 (1988).

In the present case, Derek argues that the State failed to present sufficient evidence to negate his justification defense. However, his motion for directed verdict failed to address his claim that he was acting in self-defense and instead argued only that the State had not demonstrated that his actions were purposeful. "[W]e have been steadfast in our holdings that in order to preserve an issue for review, we will not address the merits of an appellant's insufficiency argument where the directed-verdict motion is not specific." *Kinsey v. State*, 2016 Ark. 393, at 7–8, 503 S.W.3d 772, 777 (citing *Gillard v. State*, 372 Ark. 98, 101, 270 S.W.3d 836, 838–39 (2008)). In *Kinsey*, we held that a challenge to the sufficiency of the State's evidence negating Kinsey's justification defense was not preserved because although he generally mentioned self-defense in his motion for directed verdict, "Kinsey failed to identify the

5

specific elements to the circuit court that he now claims the State did not meet." *Kinsey*, 2016 Ark. 393, at 9, 503 S.W.3d at 778. Here, Derek failed to raise self-defense in his motion, and his argument on appeal is therefore not preserved for our review.

Affirmed.

GLADWIN and BROWN, JJ., agree.

*Hancock Law Firm*, by: *Sharon Kiel*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.